**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CRYPTON FUTURE MEDIA, INC.,

     PLAINTIFF,

V.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

     DEFENDANTS.

CASE NO.: 1:20-CV-05589

JUDGE MARY M. ROWLAND

MAGISTRATE JUDGE JEFFREY CUMMINGS

**FILED UNDER SEAL**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR ENTRY
OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff, Crypton Future Media, Inc. ("Crypton" or "Plaintiff"), submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, and expedited discovery.

**TABLE OF CONTENTS**

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT** ............................................... 1

II.    **STATEMENT OF FACTS** .......................................................................................... 2

    A.  **Plaintiff's Trademarks and Products** ................................................................... 2

    B.  **Defendants' Unlawful Activities** ......................................................................... 3

          i.   Defendants Operate Similar Legitimate-Looking Internet Stores. ............................................ 3

          ii.  Defendants Employ Various Tactics to Conceal Their Identities. .............................................. 4

III.   **ARGUMENT** ................................................................................................................ 4

    A.  **Standard for Temporary Restraining Order and Preliminary Injunction** ................ 6

    B.  **Plaintiff Will Likely Succeed on the Merits** ......................................................... 6

          i.   Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim ........ 6

          ii.  Plaintiff Will Likely Succeed on Its False Designation of Origin Claim and Illinois Uniform Deceptive Trade Practices Act Claim. ........................................................................... 9

          iii. Plaintiff Will Likely Succeed on Its Trademark Dilution and Tarnishment Claims. ................ 9

    C.  **There Is No Adequate Remedy At Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief** ......................................................... 10

    D.  **The Balancing of Harms Tips in Plaintiff's Favor** .............................................. 12

IV.   **THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE** ...................................... 12

    A.  **Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Trademarks Is Appropriate** ...................................... 13

    B.  **Preventing the Fraudulent Transfer of Assets Is Appropriate** .................................. 13

    C.  **Plaintiff Is Entitled to Expedited Discovery** ...................................................... 14

V.    **A BOND SHOULD SECURE THE INJUNCTIVE RELIEF** .................................... 15

VI.   **CONCLUSION** ........................................................................................................ 16

# TABLE OF AUTHORITIES

## CASES

*All Star Championship Racing v. O'Reilly Auto. Stores,* 2013 WL 1701871 (C.D. Ill. Apr. 18, 2013)....... 10

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007).................................. 16

*AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) ................................................................... 8

*Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ................................................. 14

*CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).......................................... 9

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, 2001 WL 527404 (N.D. Ill. May 15, 2001)..... 6

*Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015)... 6

*Chrome Hearts LLC v. P'ships & Unincorporated Assns. Identified on Schedule "A"*, 2015 U.S. Dist. LEXIS 120232 (N.D. Ill. Sept. 9, 2015). ............................................................................................ 6

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996).................................. 5

*Decks Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) .......... 19

*Eli Lilly & Co. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000) .................................................. 12

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)............................................................................. 18

*Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)............................ 17

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) .......... 12

*Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979) ...................................... 12

In re LDK Solar Secs. Litig., 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008).......................................... 4

In re Potash Antitrust Litig., 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ................................................. 4

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988) .................. 12

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999) ................... 10

*Juniper Networks, Inc. v. Bahattab*, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) ............................. 3

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) ................................... 14

*Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005)....... 17

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008)........ 2

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms.Indus. Ass'n.*, 929 F. Supp. 473 (D.D.C. 1996) .... 14

*MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) .............................. 13

*Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007)......................................................... 9

Nanya Tech. Corp. v. Fujitsu Ltd., No. 1:06-cv-00025, 2007 WL 269087 (D. Guam Jan. 26, 2007).......... 4

*Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005).................................. 7

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978) ....................................... 18

*Polyblank Designs Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv- 5846 (N.D. Ill. Aug. 30, 2018) ............................................................................ 16

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) ................ 2, 5

*Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002)....................................... 13

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989) ........................................................... 19

*Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) ............................................................. 12

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ................................................... 2

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) ................................... 9

*Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) ......................................................... 10

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) ...................................................... 6, 14

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) ........................ 18

*Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 18-cv-05878 (N.D. Ill. Sep. 18, 2018) ........................... 16

### STATUTES

15 U.S.C. § 1051, *et seq.* ............................................................................................................................... 5

15 U.S.C. § 1065 .......................................................................................................................................... 2, 8

15 U.S.C. § 1114(1) ......................................................................................................................................... 7

15 U.S.C. § 1116(a) ....................................................................................................................................... 15

15 U.S.C. § 1117(a)(1) ................................................................................................................................... 17

15 U.S.C. § 1125(a) .................................................................................................................................... 7, 10

15 U.S.C. § 1125(c)(1) ..................................................................................................................................... 2

28 U.S.C. § 1331 ............................................................................................................................................. 5

28 U.S.C. § 1391 ............................................................................................................................................. 5

28 U.S.C. §§ 1338(a)-(b) ................................................................................................................................ 5

Fed. R. Civ. P. 26(b)(2) ................................................................................................................................. 18

Fed. R. Civ. P. 4(f)(3) ............................................................................................................................... 1, 2, 3

Fed. R. Civ. P. 65(b) ....................................................................................................................................... 5

Fed. R. Civ. P. 65(c) ...................................................................................................................................... 19

## MEMORANDUM OF LAW

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is requesting temporary *ex parte* relief based on an action for: following: Count I, Trademark Infringement and Counterfeiting (15 U.S.C. § 1114); Count II, False Designation Of Origin, Passing Off, & Unfair Competition (15 U.S.C. § 1125(a)/Lanham Act § 43(a)); Count III, Trademark Dilution by Blurring and/or Tarnishment (15 U.S.C. § 1125(c)/Lanham Act § 43(c)); Count IV, Trademark Dilution Under 765 ILCS 1036/65 (765 ILCS § 1036/65, *et seq.*); and, Count V, Violation Of Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, *et seq.*), against the defendants identified on Schedule "A" to the Complaint (the "Defendants"). As alleged in the Complaint, Defendants operate fully interactive, ecommerce Internet stores under the online marketplace accounts listed in Schedule "A" (the "Seller Aliases" or "Defendant Internet Stores"), using infringing and counterfeit versions of Crypton's federally registered trademarks ("Hatsune Miku Trademarks" or "Crypton Intellectual Property (IP)") by offering for sale and/or selling unauthorized, unlicensed, and counterfeit products (the "Counterfeit Hatsune Miku Products" or "Counterfeit Products").

Defendants conduct a sophisticated counterfeiting operation targeting Illinois residents by operating ecommerce stores using one or more Seller Aliases through which Illinois residents can purchase Counterfeit Hatsune Miku Products. A logical relationship exists between the Defendant Internet Stores, established by uniquely shared identifiers, such as design elements and similarities of the counterfeit products offered for sale, suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

Plaintiff is forced to file this action to combat Defendants' counterfeiting of its Crypton IP, as well as to protect unknowing consumers from purchasing Counterfeit Hatsune Miku Products, and therefore respectfully requests that this Court issue an *ex parte* Temporary Restraining Order

("TRO"), which would: (1) temporarily restrain Defendants' continued manufacture, distribution, offering for sale, and sale of Counterfeit Hatsune Miku Products; (2) temporarily restrain Defendants' assets to preserve Plaintiff's right to an equitable accounting; and, (3) authorize expedited discovery allowing Plaintiff to inspect Defendants' records relating to the Counterfeit Hatsune Miku Products and Defendants' financial accounts.

## I.   STATEMENT OF FACTS

### A.  Plaintiff's Trademarks and Products

Founded in 1995, Plaintiff, Crypton Future Media, Inc., acts as the creator, marketing branch, and distributor of all authorized products utilizing the Hatsune Miku Trademarks (referred to as "Hatsune Miku Products") internationally. *See* Declaration of Paul Varley ("Varley Decl.") at ¶¶ 3. Crypton is the official licensor of Hatsune Miku Products and provides its intellectual property assets to its authorized licensees for the development, production, distribution, and sale of authorized licensed products. *Id.* at ¶ 6.

Crypton is the owner of the federally registered Hatsune Miku Trademarks. *Id.* at ¶ 7. The Hatsune Miku Trademarks: are inherently distinctive; identify  products as merchandise originating from Crypton; have been used exclusively and continuously; have never been abandoned; are valid, subsisting, and in full force and effect; are incontestable pursuant to 15 U.S.C. § 1065; and, qualify as famous marks under 15 U.S.C. § 1125(c)(1). *Id*. at ¶¶ 8-10. Crypton has expended substantial time and resources developing and promoting the Hatsune Miku Trademarks. *Id* at 11. As a result, the Crypton IP is widely recognized, and exclusively associated by consumers and the public as being products sourced from Plaintiff. *Id*. Crypton has ensured that products bearing its IP are manufactured to the highest quality standards. *Id.* As such, the recognition and goodwill associated with the brand is of incalculable and inestimable value to Crypton. *Id.*

**B. Defendants' Unlawful Activities**

Significant counterfeiting has stemmed from the success of the Hatsune Miku brand. *Id* at ¶ 12. As a result, Crypton implemented an anti-counterfeiting program that investigates suspicious ecommerce activity and online marketplace listings identified through proactive Internet sweeps. *Id*. Crypton encountered numerous Defendant Internet Stores offering for sale, selling, and importing Counterfeit Hatsune Miku Products in connection with Crypton IP. *Id*. Defendants are not authorized by Crypton to use Crypton IP. *Id*. Furthermore, Defendants operate legitimate-looking Internet stores which bear remarkable similarities, and utilize nearly-identical evasion techniques to conceal their identities and avoid enforcement efforts, which all together establish a logical and interrelated relationship among the Defendants. *Id.* at ¶ 17.

     i.  Defendants Operate Similar Legitimate-Looking Internet Stores.

The online marketplace accounts and product listings of Defendants are designed to facilitate counterfeit sales by giving the impression to consumers that they are authorized retailers featuring genuine Hatsune Miku Products. *Id*. at ¶ 14. Defendant Internet Stores look sophisticated and give the impression of authenticity, by: (1) accepting payment in U.S. dollars, through third-party payment processors, including Amazon, PayPal, and Western Union; (2) incorporating trustworthy features, such as "live 24/7" customer service; (3) implementing security solutions consumers associate with authorized retailers, displaying the logos of McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal®; and, (4) including authentic images and design elements. *Id*. Other notable common features include the: Counterfeit Hatsune Miku Products offered; images of product listings; stores' layout and appearance; listing descriptions; naming conventions for store names, listing names, and product titles; metadata; domain redirection and domain name registrations; ecommerce platforms; shipping, payment, and check-out methods; anonymity; name servers; general absence of identifying or contact information; and

3

similarly priced goods. *Id* at ¶ 17.

        ii. <u>Defendants Employ Various Tactics to Conceal Their Identities.</u>

Defendants utilize evasive tactics to conceal their identities, including, among other things: 1) using multiple aliases and addresses to register online marketplace accounts in order to avoid detection, while operating a massive network of Internet Stores dealing in counterfeit products; 2) using privacy services that conceal their identities and contact information; 3) registering new domain names/online marketplace accounts under different aliases, abandoning accounts named in lawsuits; 4) transferring hosting of their websites to rogue servers, located outside the U.S., removing themselves from the reach of the Court, frustrating enforcement efforts of IP rights-holders; and 5) retaining anonymity by shipping counterfeit products in small quantities via international mail without a return address and/or using false information, thereby minimizing detection by U.S. Customs and Border Protection. *Id* at ¶¶ 15-17.

Furthermore, counterfeiters such as Defendants, frequently operate multiple credit card merchant accounts, as well as Amazon and PayPal accounts, hiding behind layers of payment gateways, thereby allowing them to persist in their illegal operation without detection, and despite Plaintiff's best enforcement efforts. *Id* at ¶ 19. Upon information and belief, Defendants regularly move funds obtained by their infringement of Plaintiff's IP, from the accounts associated with their online marketplaces – which are held by third-party payment processors – to offshore bank accounts, which fall outside the jurisdiction of this Court. *Id.*

## II.  ARGUMENT

Defendants' purposeful and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill associated with the Crypton IP. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO, where immediate and irreparable injury, loss, or damage will result to the applicant before the

adverse party can be heard in opposition. Fed. R. Civ. P. 65(b). Entry of a TRO is appropriate as it would prevent ongoing injury to Plaintiff stemming from Defendants' wrongful use of the Crypton IP and preserve the status quo until such time as a hearing can be held.

In the absence of an *ex parte* TRO, Defendants likely will register new online marketplace accounts under new aliases, modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts to offshore bank accounts, outside the jurisdiction of this Court. Varley Decl. at ¶ 19. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over these claims pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331; and, has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391. This Court may also properly exercise personal jurisdiction over Defendants since they directly target business activities toward consumers in this Judicial District by operating Internet Stores, which directly offer for sale, and provide a platform through which Illinois residents can purchase, Counterfeit Hatsune Miku Products. *See* Complaint at ¶¶ 3, 14, and 23. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each Defendant is committing tortious acts, engaging in interstate commerce, and has wrongfully caused Crypton substantial injury in the State of Illinois.

5

**A. Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and, (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these conditions have been met, it must consider the harm the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when deciding whether to grant the injunction. *Id.* This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

**B. Plaintiff Will Likely Succeed on the Merits**

    i. <u>Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods…which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). As such, a Lanham Act trademark infringement claim has three

elements: (1) its mark is distinctive enough to be worthy of protection; (2) defendants are not authorized to use the trademark; and (3) a likelihood of confusion exists as to the origin or sponsorship of defendants' products. . *See* 15 U.S.C. § 1125(a); *Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted).

Crypton's Hatsune Miku Trademark registrations are: inherently distinctive; registered with the United States Patent and Trademark Office on the Principal Register; continuously used; never abandoned; valid, subsisting, and in full force and effect; and, often incontestable pursuant to 15 U.S.C. § 1065. Varley Decl. at ¶¶ 7-10. As such, the registrations constitute prima facie evidence of their validity and of Crypton's exclusive right to use the marks pursuant to 15 U.S.C. § 1057(b). Furthermore, Crypton has not authorized Defendants to use any of the Hatsune Miku Trademarks, nor have they authorized them as licensors or resellers of Hatsune Miku brand products. *Id.* at ¶ 14. Thus, Plaintiff satisfies the first and second elements of its Lanham Act claim.

Plaintiff satisfies the third element of its Lanham Act claim in two ways: under the Seventh Circuit's seven-factor likelihood of confusion test; and/or through the presumption of confusion inherent in the manufacture and distribution of counterfeit products. The Seventh Circuit's seven enumerated factors include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

All seven factors weigh heavily in Crypton's favor. First, Defendants use of Plaintiff's trademarks is identical in appearance, and done so in a manner, which suggests to the consumer, that the source or origin of the Counterfeit Hatsune Miku Products is Crypton. Second,

Defendants' Counterfeit Hatsune Miku Products are intentionally designed to look identical or similar to genuine Hatsune Miku Products. Varley Decl. at ¶¶ 15-18. Third, both Plaintiff and Defendants advertise and sell their products via the Internet in the same area and identical manner. Fourth, potential consumers purchasing Hatsune Miku Products are diverse, with varying degrees of sophistication, likely to have difficulty distinguishing genuine Hatsune Miku Products from Counterfeit Hatsune Miku Products. Fifth, the Hatsune Miku Trademarks have become famous, distinctive, and internationally recognizable; they signify to consumers that the Hatsune Miku Products come from Plaintiff and are manufactured to the highest quality standards. Finally, evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Hatsune Miku Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion.").

While the seven-factor likelihood of confusion test has been proven in Plaintiff's favor, Plaintiff can further establish that a likelihood of confusion exists through an additional independently sufficient basis – the presumption of confusion inherent in Defendants' counterfeiting operation. The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, here, the Court can presume a likelihood of confusion from Defendants' use of the Hatsune Miku Trademarks.

8

ii. Plaintiff Will Likely Succeed on Its False Designation of Origin Claim and Illinois
Uniform Deceptive Trade Practices Act Claim.

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must
show: (1) plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the
origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,*
2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams
Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)), which is similar to the Lanham Act test.
Furthermore, in Illinois, courts resolve unfair competition and deceptive trade practices claims,
"according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847
F. Supp. 567, 579 (N.D. Ill. 1994). Since Plaintiff has established a likelihood of success on the
merits for its trademark infringement claim against Defendants (*see supra*), a likelihood of success
on the merits for Plaintiff's false designation of origin and IUDTP claims are also established.

iii. Plaintiff Will Likely Succeed on Its Trademark Dilution and Tarnishment Claims.

The Federal Trademark Dilution Act of 1995 (FTDA) amended section 43 of the
Trademark Act of 1946 to provide a new federal cause of action for the dilution of famous,
distinctive marks. "Trademark dilution" is statutorily defined in 15 U.S.C. § 1127 to mean "the
lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless
of the presence or absence of ... (1) competition between the owner of the famous mark and other
parties, or (2) likelihood of confusion, mistake, or deception." Under the FTDA, the owner of a
famous mark may seek an injunction against another person's commercial use of a mark or trade
name, if such use begins after the mark has become famous and causes dilution of the distinctive
quality of the mark. 15 U.S.C. § 1125(c)(1); *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 904-05
(9th Cir. 2002).

Tarnishment occurs when the reputation of a famous mark has been harmed by negative

9

associations arising from the similarity between another mark and the famous mark. Situations in Tarnishment have been found in cases where a famous trademark is "linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 507 (2nd Cir. 1996). Unlike a claim for traditional trademark infringement, an action for dilution does not require a showing of likelihood of consumer confusion. 15 U.S.C. § 1127.

Here, Plaintiff is the owner of the Hatsune Miku Trademarks. Varley Decl. at ¶ 7. The Counterfeit Hatsune Miku Products are identical, feature components of and/or are derived from the protected Hatsune Miku Tradmarks, and are used by the Defendants in an unwholesome or unsavory context, and/or are linked to products of shoddy quality. Furthermore, as Plaintiff has established that Plaintiff's federally registered trademarks are famous and have shown a likelihood of success on the merits for its trademark infringement claim against Defendants (*see supra*), a likelihood of success on the merits for Plaintiff's state and federally based claims for trademark infringement through trademark dilution and tarnishment are also established.

### C. There Is No Adequate Remedy At Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm

10

attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the Hatsune Miku Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Varley Decl. at ¶¶ 20-24. The extent of such harm, and the possible diversion of customers due to loss in brand confidence, are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Furthermore, Defendants' intentional trademark infringement deprives Plaintiff of the ability to control the content protected by Plaintiff's Trademarks; devalues the Hatsune Miku brand by associating it with inferior quality goods; and, undermines the value of Plaintiff's IP, by creating the impression that infringement may be undertaken with impunity thereby threatening Plaintiff's ability to develop further licensees and maintain existing licensee relationships. *Id*. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum, Plaintiffs have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiffs will suffer irreparable harm because of [Defendant's] likely inability to pay for the past and/or future infringements that it has induced. Additionally, [Defendant's] inducement has and will continue to irreparably harm Plaintiff's ability to enforce its exclusive rights."*).*

Accordingly, Plaintiff has satisfied the Seventh Court's standard for granting preliminary

relief by establishing that there is no adequate remedy at law and that Plaintiff will continue to suffer irreparable harm in the absence of such relief.

### D. The Balancing of Harms Tips in Plaintiff's Favor

Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted. The Court must next consider the potential harm that Defendants could suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balancing of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms.Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Defendants are knowingly using Crypton's protected Crypton IP, in order to profit from sales of Counterfeit Hatsune Miku Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires Defendants be ordered to cease their unlawful conduct.

## III. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure

12

provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. The facts in this case warrant such relief.

### A. Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Trademarks Is Appropriate

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the Hatsune Miku Trademarks, and/or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the Crypton Intellectual Property and associated goodwill, as well as the ongoing harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Crypton IP. The need for *ex parte* relief is magnified in today's global economy, where counterfeiters can easily and anonymously operate over the Internet. Plaintiff is currently unaware of the true identities and locations of Defendants, as well as other ecommerce Internet Stores used to distribute infringing and Counterfeit Hatsune Miku Products. Many courts have authorized immediate injunctive relief in similar cases involving unauthorized use of trademarks and counterfeiting. *See, e.g. Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 18-cv-05878 (N.D. Ill. Sep. 18, 2018) and *Polyblank Designs Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv-5846 (N.D. Ill. Aug. 30, 2018).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit Hatsune Miku Products is not impaired.[1] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint

---

[1] Plaintiff, Crypton Future Media, Inc., has concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim; therefore, Plaintiff is entitled, "subject to the principles of equity, to recover ... defendant's profits." 15 U.S.C. § 1117(a)(1). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought.

The Northern District of Illinois, in *Lorillard Tobacco Co. v. Montrose Wholesale Candies,* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, *de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). As the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint preventing the fraudulent transfer of assets is appropriate and proper.

14

### C. Plaintiff Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Additionally, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to order any third-party, in active concert with the Defendants, to provide expedited discovery in an action once notice of the order is given. Fed. R. Civ. P. 65(d)(2)(C).

Plaintiff respectfully requests expedited discovery, specifically of third-party payment processors, to discover the bank and payment system accounts Defendants use for their counterfeit operations. The request in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Without this information, an asset restraint would have little value as Plaintiff would not know the entities upon whom to serve the Order. Discovery of these accounts, so they can be frozen, is necessary to ensure Defendants' activities are contained. *See, e.g., Decks Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Accordingly, Plaintiff respectfully requests expedited discovery be granted.

## IV. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). See, e.g.,

*Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## V.    CONCLUSION

Defendants' counterfeiting operations are significantly injuring and irreparably harming Crypton's business, its Hatsune Miku brand, consumers, and the general public. Without entry of the requested relief, Defendants' infringement and deceptive use of Plaintiff's Crypton Intellectual Property will continue to lead prospective consumers and the public to believe that Defendants' Counterfeit Hatsune Miku Products have been manufactured by or emanate from Crypton, when in fact, they have not. In view of the foregoing, and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith, and set a status hearing before its expiration, at which hearing Plaintiff intends to present a motion for preliminary injunction.


DATED: September 21, 2020                              Respectfully submitted,

                                                      */s/ Ann Marie Sullivan*
                                                      Ann Marie Sullivan
                                                      Alison Carter
                                                      AM Sullivan Law, LLC
                                                      1440 W. Taylor St., Suite 515
                                                      Chicago, Illinois 60607
                                                      Telephone: 224-258-9378
                                                      E-mail:  ams@amsullivanlaw.com

                                                      ***ATTORNEYS FOR PLAINTIFF***

16